BAILES, Judge.
The plaintiff, New Orleans Lake Shore Land Company, in Receivership, (hereinafter referred to simply as N. O. Lake Shore) appeals from the judgment of the district court sustaining the exceptions of no right of action filed by Maria Realty, Inc., and Mrs. Lewis A. Giraud, third party defendants, impleaded by the defendant, City of New Orleans, as its vendor and immediate ancestor in title of certain property which plaintiff asserts ownership.
We find the trial court committed error of law in sustaining the exceptions of no right of action. The judgment appealed is reversed and the action is remanded to the district court for further proceedings in accordance with law.
*708 On the trial of the exceptions of no right of action, the following relevant facts were established: that on March 14, 1908 the plaintiff acquired from the Hibernia Bank & Trust Company (hereinafter referred to simply as Hibernia) a large tract of land (being one or more tracts) which included, among other properties, all of Section 10, township 12 South, Range 12 East, and in order to facilitate the development and sale of this property, plaintiff conveyed title thereto to Hibernia, as trustee, on March 24, 1914. In the subdivision of a portion of the plaintiff’s property, the civil engineer laid out Dwyer Canal, which later became Dwyer Road, on what he considered was the south line of said Section 10.
Recently, another civil engineer allegedly discovered that the first civil engineer erroneously located the south line of Section 10 some distance north of its correct location. Such being the alleged situation, it follows that the subdivision of the property of Section 10 omitted therefrom a strip of property south of Dwyer Canal (now Dwyer Road) that was owned by plaintiff and which it never alienated. The property that is involved in the present litigation lies within this strip, and is located within Section 10, south of Dwyer Road.
After it was discovered that the strip of land above described, was omitted from the sale to Northern States Citrus & Realty Company, Inc., (hereinafter referred to simply as Northern States), more fully described below, a receivership was instituted by plaintiff in April, 1966, in the Civil District Court of Orleans Parish. The receiver appointed for plaintiff on July 9, 1969, acquired by quitclaim deed the subject property from Hibernia Bank & Trust Company, in Liquidation.
In this quitclaim deed it is noted that: “ * * * The parties declared that this act is executed for the purpose of recon-veying to New Orleans Lake Shore Land Company, in Receivership, legal title to the interest of the Hibernia Bank & Trust Company, in Liquidation, in and to the above-described property, so that New Orleans Lake Shore Land Company’s ownership of the property may be recognized, in conformity and compliance with the terms of the aforesaid trust agreement * *
In 1918, as the result of financial problems, the United States District Court for the Eastern District of Louisiana, appointed a receiver in equity, and by proper proceeding the receiver was placed in custody of the property of N. O. Lake Shore, and was ordered to make and file an inventory of all property coming into his possession. Although the inventory is not before us in this record, at the time the federal court receiver was appointed and ordered to make an inventory, the property had been subdivided into blocks, lots, groves, and villas, and shortly thereafter all roads, streets and boulevards, and the general systems of canals for drainage purposes had been laid out and dedicated.
The exception of no right of action is grounded in the contention that N. O. Lake Shore has no title to the land in question for the reason that all property of the plaintiff was disposed of by the Special Master of the federal district court joined in by both N. O. Lake Shore and Hibernia for the purpose of paying the debts of N. O. Lake Shore.
From the exceptions and the grounds urged therein, the pivotal issue then is whether the conveyance by the Special Master and necessarily joined in by both N. O. Lake Shore and the trustee, Hibernia, did in fact and in law dispose of the property located south of Dwyer Road and North of the south line of said Section 10.
On March 11, 1919, the Special Master, acting on order of the federal district court offered for sale certain property described as parcels No. 1 to 9 inclusive, and sold subject to court approval, said property to Northern States. The proposed sale was approved by the federal court on March 24, 1919.
*709 A portion of the order of the court approving the proposed sale is pertinent herein, viz.:
“ * * * and the said sale to Northern States Citrus & Realty Co., Inc. be and the same is hereby confirmed and made absolute, and W. Morgan Gurley, Special Master, Edward F. Dickinson, Receiver, and New Orleans Lake Shore Land Company, through Frank B. Hayne, President, or other executive officer, be and they are hereby directed and ordered to make a deed to the property included in said sale to Northern States Citrus & Realty Co., Inc., the said deed to be made with full warranty by the New Orleans Lake Shore Land Company and to be made of all right, title and interest by the other parties; and the Hibernia Bank & Trust Company, Trustee, through R. S. Hecht, President, or other executive officer, be and it is hereby directed and ordered to intervene in said deed and to transfer unto the said Northern States Citrus & Realty Co., Inc., all its right, title, interest, claim and demands in and to said property included in said sale.”
None of the nine parcels sold by the Special Master to Northern States included by description the subj ect property.
By petition of the receiver, the federal district court of the Eastern District of Louisiana was apprised of the existence of other property which had not theretofore been sold and which, so the petition states “were inadverently omitted from the sale of the assets of the receivership made by W. Morgan Gurley, Special Master herein, on March 11, 1919, under the decree and order of sale entered herein on the Sth day of February, 1919, and confirmed by this honorable Court on March 24, 1919, * % ^ »
Further it was alleged, “Upon investigation, petitioner believes that it would be to the advantage of this receivership and of all concerned to sell, at this time, at public auction, after due advertisement, the above described property in order that funds may be realized wherewith to pay costs of administration, and for other lawful purposes.”
It is noted that the federal court on April 21, 1927, entered an order confirming the sale of the then newly found property to the New Orleans Industrial Canal Land & Harbor Development Company, Inc., (hereinafter referred to simply as N. O. Industrial).
On July 2, 1930, the Court entered an order discharging the receiver and releasing and discharging the surety on his official bond on its finding that the receiver had fully accounted for all assets and property that came into his hands as receiver of the properties of N. O. Lake Shore and that further administration was unnecessary.
Subsequent to the discharge of the receiver the former receiver petitioned for and was granted by the court permission to destroy the voluminous records of that office and to sell the trunks, boxes, filing cabinets and voucher filing drawers at such price as he could obtain.
In sustaining the exception of no right of action, the trial court reasoned:
“ * * * When the Federal Receivership was instituted all properties of New Orleans Lake Shore Land Company were surrendered to the Federal Receiver, in accordance with an Order dated August 29, 1918, signed by the then Judge presiding over the Court having jurisdiction of the receivership. Plaintiff’s counsel’s contention that title to the properties did not vest in the receivership because ‘an equity receiver does not hold legal title to the property under administration in the receivership’ appears to the Court to be without merit in the instant proceedings. The Court’s reasoning being that if the Receiver did not have title to the property he would have been unable to deliver a valid title to those purchasing the various properties *710 which were sold in the receivership proceedings. The record does not disclose that in transferring title the New Orleans Lake Shore Land Company, or others, joined the Receiver in the sale.
“Inasmuch as all of the property of New Orleans Lake Shore Land Company was delivered to the Receivership, the property continued to vest in the Receivership until disposed of in some manner or form.
“As stated in the ‘Reasons for Judgment’ heretofore rendered by the Court, plaintiff claims that the particular property which formed the basis of the within proceedings has not been sold by the Receiver. If this position is correct, then the Court is now of the opinion that the property remains vested in the Receivership and can only be disposed of by it through the re-opening of that Receivership. This right was reserved to the Federal Court by the decree of the Court rendered in February of 1919. The record does not disclose that the Receiver turned back or transferred any remaining property to the New Orleans Lake Shore Land Company (or the present State Receivership) which would be customarily done where a receivership ended with remaining assets. Obviously, in view of the fact that there remained many unpaid creditors of the New Orleans Lake Shore Land Company, it would not have been possible for the Receiver to have returned any of the assets to the company.
“It cannot be disputed that it was the purpose and intent of New Orleans Lake Shore Land Company to turn over ALL of its property to the Receiver. To contend otherwise would be to subject the company to a charge of fraudulent' intent. As heretofore stated, with ALL of the property in the hands of the Receiver, the only manner in which it could have been reverted back to New Orleans Lake Shore Land Company would be through either a sale or other form of transfer, hence although, as originally set forth in the heretofore referred to ‘Reasons for Judgment of December 13, 1971,’ title to the particular land herein involved vested in the New Orleans Lake Shore Land Company, it was placed in the ‘hands of the Receiver appointed by the Federal Court’ and never transferred out of ‘his hands.’
“It therefore appears to the Court that unless the particular land involved herein was actually sold it now remains subject to the further Orders of the Federal Court, and the Receivership instituted in the State Court is without assets, unless the property would be hereafter transferred to it by a Federal proceeding.
“Exceptors now argue that the Court was in error in contending that the particular property involved herein was not disposed of by the Federal Receiver. There would appear to be merit in their contention for the reason that in the decree dated February 5, 1919 (G-V), the Court ordered the sale of ‘All right, title, interest, claim and demand in and to all roads, canals and pumping plants, heretofore or hereafter dedicated.’ This decree would appear to be all-inclusive (a ‘catch all’ clause) and would certainly have indicated an intention on the part of the Receiver to dispose of ALL of the remaining assets, regardless of where located, and would show an intent to cover the type of property now claimed by plaintiff. The record further shows that this item was actually included in the $75,000.00 sale.
“There is further merit to exceptors’ contention that inasmuch as New Orleans Lake Shore Land Company joined in the petition which formed the basis for the Federal Court’s Order of July 2, 1930, it is bound by that Order, and that it cannot now attack portions of the Order which is now res judicata. In the petition (and affidavits) it is alleged that the ‘receiver has fully accounted for all assets and property.’ If, as hereinbe- *711 fore stated, there was property which was not turned over to the Receiver, intentionally or otherwise (by Oversight), then that property, in the Court’s opinion, must nevertheless he administered hy the Federal Receivership, which, by the terms of the Order of Discharge, retained jurisdiction of all of the assets of the Receivership of the New Orleans Lake Shore Land Company.
“Nevertheless, as also stated above, it would clearly appear that the very property which forms the basis of the within suit was actually disposed of by the Receiver when he disposed of the referred to ‘Item 10’ of the decree.
« sfc * * ”
Appellant sets out as specifications of errors that the district court erred in holding:
1. That New Orleans Lake Shore Land Company disposed of the subject property in the prior federal equity receivership proceeding; and
2. That the federal equity receivership, which terminated in 1930, forecloses administration of the subject property by the State court appointed receiver.
We find the trial court erred in holding that all properties of N. O. Lake Shore were surrendered to the federal receiver. The trial court’s rejection of the contention of plaintiff that title to the properties did not vest in the receiver is error. The trial court stated as its reason for rejection of plaintiff’s contention “being that if the Receiver did not have title to the property he would have been unable to deliver a valid title to those purchasing the various properties which were sold in the receivership proceedings. The record does not disclose that in transferring title the New Orleans Lake Shore Land Company, or others, joined the Receiver in the sale.”
The trial court is mistaken as to the facts. The contrary facts are true. The receiver had custody of the property, not the title thereto. It is a fact that the federal district court in its order dated March 24, 1919 approving and confirming the sale of certain property to Northern States incorporated the following provision. “ * * * and New Orleans Lake Shore Land Company, through Frank B. Hayne, President, or other executive officer, be and they are hereby directed and ordered to make a deed to the property included in said sale to Northern States Citrus & Realty Co., Inc., * * * all its right, title, interest, claims and demands in and to said property included in said sale.”
As further corroboration of the fact that title did not vest in the equitable receiver, in the sale of the four parcels of land (as discussed above) inadvertently omitted from the sale of the property on March 24, 1919 to Northern States, the court included the following in its order of December 3, 1926, of the sale of the property on April 21, 1927 to N. O. Industrial, viz.:
“ * * *
“THIRD: That notwithstanding the record title to the real estate hereinabove described stands in the name of the Hibernia Bank & Trust Company, Trustee, nevertheless the equitable ownership of said real estate is in the defendant, New Orleans Lake Shore Land Company, and said trustee holds said property for the account and benefit of said New Orleans Lake Shore Land Company and its Receiver.
“IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the property hereinabove described, now in the hands of the Receiver and owned by the defendant, New Orleans Lake Shore Land Company, be sold as hereinafter directed, * * *.
« H* H* #
“NINTH: IT IS FURTHER ORDERED, ADJUDGED AND DECREED that * * * ’ he or they *712 (meaning the purchaser) shall be entitled to a deed or deeds or other instruments to be executed according to law by the defendant, NEW ORLEANS LAKE SHORE LAND COMPANY and the Hibernia Bank and Trust Company, trustee, * * * and each of said NEW ORLEANS LAKE SHORE LAND COMPANY and the Hibernia Bank & Trust Company, trustee, is hereby directed to execute such deed or deeds or other instruments * *
To confirm the fulfillment of the order of the federal district court there is filed in the record before us a certified copy of the resolution of the board of directors of N. O. Lake Shore authorizing Frank B. Hayne, President to intervene in the act of sale of the property to Northern States, and additionally there is a certified copy of the resolution of the board of directors of Hibernia providing similar authority for its president, R. S. Hecht, to appear in the act of sale, as well as the act of sale whereby title to the therein specified property was conveyed by the parties to Northern States.
Passing now to a consideration of whether title to the subject property had been disposed of in prior federal court receivership proceedings, we find the records from that proceeding received in evidence herein refutes any contentions of the ex-ceptors that title thereto had passed to Northern States in the deed dated March 27, 1919.
Were such a fact, there would have been no reason for the sale of property subsequently found omitted from the Northern States sale and sold to N. O. Industrial, in 1927.
The simple fact is that the property sold to Northern States was sold by specific and particular description and did not include any other property not expressly included therein.
This is clearly exemplified by the following preamble to the description of the property sold, viz.:
“Item No. 8
“All of the unsold lands belonging to the said New Orleans Lake Shore Land Company, together with the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, divided in the following classes and described in detail as follows, to wit: * *
There is no reference in the deed to Northern States that infers a sale of unknown or undescribed property.
Exceptors argue that where ambiguities exist in an act of sale, it must be resolved in favor of the vendee. There is no ambiguity. The intention of the parties is clearly set forth in the deed that certain and specific property was conveyed by this deed.
There is no inference to be drawn that fraud was practiced on or by any of the parties. The alleged existence of the subject property was unknown to all parties to the receivership proceedings. The knowledge of the alleged existence had its inception in the Gandolfo survey made many years after the Northern States sale.
If the subject property was included in the Northern States deed it must follow that the four parcels of land admittedly omitted from the Northern States sale, was likewise included, and that the court was a party to ill practices in having the four parcels sold to a third party when it in fact already belonged to Northern States. No one has suggested such to be the case. No one has suggested that the property sold to N. O. Industrial was actually the property of Northern States.
The evidentiary hearing on August 3, 1926, as ordered by the federal district court, dispels any doubt that all previously *713 unsold property was included in the North-era States sale. There was testimony from witnesses at the hearing that the property omitted from the Northern States sale should have been included therein but was inadvertently omitted.
We find no relationship between the subject property and the property described in Item 10 referred to by the trial court as being “the very property which forms the basis of the within suit. * *
The property described in “Item 10” is “All right, title, interest, claim and demand in and to all roads, canals and pumping plants, heretofore or hereafter dedicated.’
This cannot serve as a “catch all clause” to include land ownership of which was unknown and unclaimed at the time. Our perusal of the deed to Northern States convinces us that this clause is not contained in the deed, and even if included it would be meaningless to convey title to any property dedicated to public use such as streets, canals, etc.
In Hargrove v. Hodge, et al., 9 La.App., 434, 121 So. 224, 225 (1928) Writs denied, the court stated:
“The description in a deed must be such that the property intended to be conveyed can be located and identified, and the general rule is that the description must fully appear within the four corners of the instrument itself, or that the deed should refer to some map, plat, or deed as a part of the description, so that the same may be clear.”
This leaves us with no uncertainity that it was not the intention of the federal court, the Special Master, the receiver or any of the owners of the property that no property not specifically described was included in any sale heretofore made.
Turning now to that portion of the reasons for judgment holding that if the subject property was not sold to Northern States, it now remains subject to the further orders of the federal court, we find the law contrary to the ruling of the trial court.
The order of the federal court terminating the receivership and discharging the receiver clearly shows that the receivership was at an end.
This order provides:
“IT IS ORDERED, ADJUDGED AND DECREED: That Edward F. .Dickinson, Receiver of the properties of New Orleans Lake Shore Land Company, be, and he is hereby finally discharged as Receiver, and that the surety on his official bond as Receiver is hereby released and discharged.”
From the above it is obvious there was no retention of jurisdiction anticipated or contemplated and the termination was unrestricted.
The law is clear on this holding.
45 Am.Jur., Receivers, § 183:
“It is the power of a court appointing a receiver to close the receivership at any time. The receivership is terminated by a discharge of the receiver, unless a successor is appointed.”
75 C.J.S. Receivers § 96:
“A receiver’s discharge terminates the receivership; the effect of a discharge of a receiver is to terminate his duties and authority, and if the discharge is unconditional and there is a surrender of jurisdiction over the trust, without any reservation as to existing claims, the effect is to release not only the receiver, but also the property, from further liability in the receivership suit or proceeding and such summary jurisdiction over the receiver as the court has in the receivership proceeding case.”
*714 As we hold the receiver had no title to the property, was actually no more than a custodian and an administrator, upon the receiver’s discharge, whatever residue of property existed, full control thereof reverted to the owners.
We find no conflict between the past federal court proceedings heretofore legally and completely terminated on July 2, 1930, and the present state court receivership proceedings.
45 Am.Jur., Receivers, § 167:
“The protection of the rule against interference by or with another court in respect to a res in receivership continues until the expiration of the receivership, but terminates therewith. In other words, it is only while the property is in possession of the court, either actually or constructively, that the court is bound or professes to protect that possession from the process of other courts. Whenever the litigation is ended, or the possession of the officer or court is discharged, other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not. However, the exclusive jurisdiction of a Federal court arising out of the possession of the res by a receiver may be continued, after the discharge of the receiver, by reservation in the decree of the court of jurisdiction over the property and over claims against it, as against subsequent process against the property issuing out of a state court.”
For the- reasons assigned the exceptions of no right of action are without merit, and accordingly, the judgment of the trial court sustaining the exceptions of no right of action is reversed and the action is re.manded to trial court for further proceedings in accordance with law and not inconsistent with the views herein expressed.
Reversed and remanded.